We've seen this movie before. The court has seen it any number of times. My dear friend Judge Terry Boyle has had a dozen or more of these cases in Richmond. They have all come out the same way. They have all been remanded by the court for re-sentencing and re-explanation or in some cases explanation for the first time of just why he picked a particular sentence. The Provence case, United States against Provence, which this court decided in 2019, is the most significant case in the briefing. Judge Thacker, I believe, wrote that opinion and she noted that we have held sentences with more explanation to be procedurally unreasonable. This court is simply left to wonder, left to speculate on why Judge Boyle picked a particular sentence or did not pick a particular sentence. And there are a number of other cases cited in the brief. And if those cases are remanded for re-sentencing and a better explanation from the court, I simply don't believe that there's any way around having a re-sentencing in this case. Now, this court asked for the supplemental briefing on two issues. One of them was the adequacy of the district court's explanation of the sentence. And I think that is clear as again, I think re-sentencing is absolutely mandated. Mr. Craven, can I ask a question about that issue? So, clearly, Judge Boyle didn't say very much in this case, but I think we have to take each case on its own merits. And so, the context here was an argument by counsel below, and I don't think you were the lawyer below, but essentially said, asking for a downward variance on these for two reasons. One, that he was a young man with no prior felony convictions, and that he had significant support in the community. And that, as I understand it, was the sum and substance of the case and mitigation. I'm not downplaying that, but that's essentially what he said. And then the government responded by pointing out that the circumstances of the offense, including that he arranged for over 15 different drug deals, and that he had, there was a child present at one point, I guess, in the house when he was dealing heroin, and that the violent crime incidences in his neighborhood had gone down significantly since Mr. Suggs and someone else had been removed from that environment. And the judge, after hearing all of that, essentially said that the government had satisfied their burden and a sentence within the guideline at the low end is appropriate. Now, can't we simply infer that essentially Judge Boyle said, you know what, I hear your argument, Mr. Suggs, about why downward variance is appropriate, but I think the government's rationale for why one is not appropriate is a better one, and therefore I'm going to sentence within the guidelines. Isn't that essentially what he said? I think that's a stretch, your honor. He could have made that a great deal clearer. Well, let me ask you this. If he had said that, would that be enough? Maybe. Maybe. But I think it's a stretch to say that that's what he said. Now, that's the government's argument, but Judge Boyle talked about the government satisfying its burden of proof under 3553A. Mr. Craven, let me ask you this question. I think that's what you're telling us, but the JA59, I think, if I'm wrong, the government can correct me, I think the only thing Judge Boyle says, I think under 3553A the government has satisfied their burden of proof, and a sentence within the guideline to low range is appropriate in this case. Did he say any more than that? Did he say any more than that? Yes, sir. That was the extent of the explanation, and I would say to that that the government had no burden of proof under 3553A. The burden imposed by 3553A is on the district court to explain its sentence, and Judge Boyle went from that sentence that your honor just read to the very next line is I'll impose a sentence of 63 months. No explanation for whatever, and so I don't think he went far enough. Now, I know the government disagrees with me on that, but I think this is virtually identical to Provence, and Limas, and Carter, and a number of other cases, and if we're going to remand, and I understand what Judge Diaz said, and I agree, we have to take each case separately. You know, none of them are completely on all fours with one another, but they're very, very similar here, and if we're going to remand those cases for resentencing, I don't know how we can avoid doing that in this case. I really don't, and Judge Boyle, I think you put your finger on it right there. In any of those cases, I mean, you know, I take your point to be it's not proof is not really the right language, but, you know, I mean, when I read that, I read it sort of naturally to mean that, you know, I agree with the government. The government's won out here. That is certainly one interpretation of that, but to some extent, we are left to speculate. Judge Boyle could have, and we suggest should have spelled it out with much more specificity than he did. I agree with both of those things. He could have and should have. The question is whether he was required to. I mean, I can agree with you that he could have, and I can even agree with you that we would all like for him to, but was he required to is really where I'm getting at. If he says the government's got the better of the argument, why isn't that enough? Well, I don't think he said that. I think he stopped short of saying that. Is that implied? Yeah, but again, you know, how are we gonna remand Provence for re-sentencing and not remand this one? They're just virtually identical. They really are, and again, as I began with, we've seen this movie before a dozen or more times just in the last couple of years, and this court has expressed... But we have in Provence itself, right, there's no reference to the government's argument, right? He just says I'll impose a sentence of probation of five years. Right, I mean, he doesn't say, I mean, you know, anything from which we could imply that the government's got the better of the argument. No, but it was after he sentenced Provence after the government had made its argument. Right, but I think the point of Provence is you got to give us something. Yeah. Right, and the question is, is the implication that the government got the better of the argument not enough? I don't think it is enough, and you're right, he's got to give us something to go on, or we're left to speculation. I don't think... Mr. Craven, doesn't it also matter that sort of the extent of the case that's presented by the defendant? I mean, in Provence, it was a lot, a little bit more, maybe not a lot more, but certainly a lot more than what's presented here as to... I pointed out what I thought was the gist of the defendant's argument here, that he had taken responsibility and that he was young and the like, and that was it. I mean, that's an argument that's made virtually in every case, and again, I'm not denigrating that, but there really wasn't anything all that significant about the defense argument that required the judge to say a whole heck of a lot. I think had the defense made no argument at all, the district court still has the obligation to explain the sentence with some degree of specificity. Now, the weaker the defendant's sentencing argument, probably the less the district court has to provide in the way of explanation, but I think this court, with the record as it is right now, is left to speculation. I really do, and I think my time is up, but... All right. Thank you, Mr. Craven. You've got some time left for rebuttal. Let's hear from Ms. Brown. Thank you, Your Honor. A sentencing explanation does not have to be lengthy to be sufficient. The government understands this court's preference, stated even here today, that this district court would provide more explanation, but what was provided in this case was sufficient, all the more so because, and this is an important point that has not been mentioned by my colleague, this was a guideline sentence in a typical case. The explanation wasn't long. The government recognizes that. We would never say otherwise, but the words that were said did a lot of work. They did the work that no one who left that courtroom that day, least of all the defendant, had to leave scratching his or her head and saying, why did I receive this sentence that I did? And under the prevailing Fourth Circuit and Supreme Court case law, this is enough, and that's why we ask that this case be affirmed. At sentencing, as Your Honor mentioned, Judge Diaz, the defendant made limited arguments under the 3553A factors. Those arguments, limited though they were, were then directly and effectively countered by the assistant United States attorney head on. The government then, excuse me, the court then weighed the two, and the government agrees with Judge Richardson's explanation just now that this was the judge essentially saying, I've weighed these and this is one out. Was it a model of the most articulate way this could have been said? I think we'd all agree no, but it's clear what he was saying. I weighed these and the government's went out and they were directly on point to each of those limited 3553A arguments. Based on that and with reference to the statute and the guidelines, the judge imposed a low-end guideline sentence. By incorporating, by reference, those 3553A arguments and explicitly referencing that low end of the guidelines, the court did sufficiently explain this sentence. Respectfully to my colleague, we haven't seen this time and time and time again. We have seen cases that have come before this court from this district court, but this case, just like the defendants below, deserves an individualized assessment. And here there are important things to distinguish this from other cases to which my colleague refers. Rita tells us that when a case is conceptually simple, as this one was, I think we could all agree, and the record is clear that the sentencing court considered the evidence and arguments, it doesn't require an extensive explanation. And here we know why the court did what it did. It told us the court was persuaded more heavily by the government's directly responsive 3553A arguments and they were compelling. The defendant in this case made limited arguments. As your honor, Judge Diaz summarized that this defendant had no prior felonies, a limited. Counsel, what do you do with the burden of proof? I mean, you know, if instead of the phrase burden of proof, he had said, you know, the government's argument or something other than burden of proof, your argument would be stronger in my view. What do you make of the use of the phrase burden of question? And I think there could have been a more articulate way of phrasing that. I think from the whole picture, including the fact that he then imposed the sentence that the government had requested, which was dramatically different than the one that was requested by the defendant. I think it's a fair reading to say that he was saying essentially that I've weighed these, the government's is better. It's a balancing and the government's wins out. I agree there is not a specific burden of proof for the government and the phrasing could have been more specific. But I think in the context of the whole hearing where it's clear that the judge paid attention, considered these arguments, was very familiar with this case, and then gave the sentence that the government had just requested, that that is what he was getting at by that statement. Ms. Brown, shouldn't he have at least said, I have considered your non-frivolous, I didn't have to use the word non-frivolous, I've considered your arguments and I don't buy them. It is the government's position that that was implicit in his preferencing of the government's arguments. That the government's arguments were specific responses to those arguments by the defendant and by preferencing those and saying essentially those went out, the court was in effect saying that. The defendant said, I have a low criminal history, no felons. The government responded directly on point and said essentially the defendant may have low conviction history, but the defendant's criminal history is extensive, even just in this case where he committed, according to the PSR and evidence, 15 separate felonies just in this case, just in 2018. The defendant said, I have community and family support. The government said at sentencing, you involved a small child in a drug deal. You recruited and involved your younger brother who was just 17 in this drug, excuse me, in this drug crime and your community, according to law enforcement, has been demonstrably safer since your arrest and those of your compatriots in the Crips street gang and your co-defendants in this case. By hearing those arguments that directly addressed those two arguments by the defendant, I think it's a separate separate query whether those truly were non-frivolous arguments by the defendant, but they were specifically addressed by the government. And the court did essentially say the government's went out. So to the extent that- Ms. Brown, can I, so, you know, part of the court's concern that I'm not singling out this particular district court, but because we, we all know that district courts are busy and we don't expect perfection. We certainly don't expect district courts to dot their T's when it doesn't matter. But of course, sentencing is the most important thing that a district court can do. And so it's important that a defendant understand that his arguments are being heard and, and that the process works as it should. And so that's sort of where we're trying to draw the line here. And as Mr. Craven pointed out earlier, there've been some instances where the line has been drawn that required the case to go back to this district court because of a concern that perhaps the arguments were not heard. And so I guess the question is, where does this case fall on that continuum? And I hear you saying that it's not one of those cases, but are you making a harmless error argument here? Or what's your position on that? We did not argue harmless error in our brief. I would certainly be happy to address that if your honor specifically would like me to discuss harmless error. I certainly can. You didn't argue it in your brief. I don't know that you need to argue it now. Yes, your honor. And that's why I didn't bring that up. But to respond to your question, Judge Diaz, you would like to hear that. I certainly would be happy to argue that. I think there are several things here, to be sure I'm referencing your original question, that do make this different and that show us, I think your question was, how does this defendant leave knowing that this judge was actively engaged in his sentencing? If he doesn't say all these specific things, repeating the government, how can that defendant leave knowing he's been harmed? And I think there are a few things in this case that we could point to directly and easily. First thing, when the defendant walked in, the district court asked to hear from him before anything else. And the defendant did allocate. As my colleague noted in his reply brief, or perhaps his original brief, it was nothing out of the ordinary, but he had his opportunity to be heard. And the judge thanked him for that. In this case, there was a witness who testified at sentencing in depth as to the facts. And when the judge couldn't hear the witness, the judge asked him to speak up, showing an involvement in the hearing. This isn't a case where a judge is just sitting back, watching the time pass. He's actively engaged. And he says, I can't hear you speak up. I need to understand this. And then perhaps most remarkably, at the end of the witness's testimony, the judge, recognizing that this was the 12th in time of 12 defendants involved in this case, the court questioned of the witness, isn't this exactly how this case worked? And give a factual summary of this somewhat unusual factual basis for this particular hearing in terms of how, not the crimes themselves. But he explained to the witness, isn't this how this case worked? This was a clearinghouse. It was like a bazaar. Now defendants would bring their guns and drugs to this warehouse and conduct their transactions, showing that he was actively engaged and this defendant was being heard. The other thing in this case, and it is an important one, is the work done by the fact that this was a guideline sentence in a typical case. The guidelines this court has indeed recognized and the Supreme Court hasn't recognized that when a guideline sentence is imposed, and here it was a bottom of the guideline sentence, the court can give a more brief explanation than in other cases. Importantly, I would note that the Provence case was a dramatic deviation from the guideline range. Many of the cases my colleague has cited were indeed deviations from the guideline range. This was not, and that is a significant factor under Fourth Circuit and Supreme Court case law. Rita tells us that that guideline range, it's not an arbitrary range. It's designed to approximate 3553A factors. Now, of course, that's not all there is to do, which is why we have these hearings and why this and other defendants were heard on those. But for example, this defendant's primary argument was his lack of criminal history and his inexperience criminally. That accounts for half of his guideline range, which this court found appropriate in this case. So the fact that this was a guideline sentence does a lot of work in this case, and it requires less explanation under this court's case law and Supreme Court case law. The other important factor is that this is a typical case. This isn't one that was a rare aberration from cases that this court has seen many, many times. And again, under this court's case law in blue and others, as I previously cited for explanation and Supreme Court case law, a typical case requires less explanation. This is a case that was a drug and undercover officers. He was arrested, indicted, arrested, arraigned. All those processes followed the typical process up to his sentencing, where again, he was a typical case even within his own indictment as the final of 12 co-defendants to be sentenced on this fact pattern. So those things all also contribute to the fact that this is a case where a judge can be perfectly sufficient under the law with a brief sentencing explanation. We recognize that this was indeed a brief sentencing explanation, but it is our position that the court adopted, incorporated by reference, the government's 3553A arguments, which were directly on point to those proposed by the defendant. I think to Judge Floyd's point, we can query whether those were even non-frivolous given the response from the government and the way they played out in this case, but they were, excuse me, squarely addressed by the government's arguments and then adopted by the court. This was not a case where the defendant had to leave saying, I have no idea why the judge did what he did, which was this court's finding, not in so many words, in Provence and is another reason that this is importantly distinguishable from that case. Your Honor has not asked any questions about the Rule 11 issue. I would certainly be happy to have been fairly focused on the sentencing explanation in this case. I think importantly, it is the government's position that when this defendant left the courtroom that day, he knew why he'd been sentenced. His family members who were there, the government, they knew why he'd received the sentence he did, and it's because the judge went with the government's interpretation, weighing of those 3553A factors, the limited 3553A factors that the defendant brought up. It was brief, but in this case, the judge did give this defendant the individualized attention he has afforded under the law. It's permitting the meaningful appellate review that this court is engaged in, and because we know what the judge did and why he did it, we would ask this court to affirm the sentence. Thank you. All right. Thank you, Ms. Brown. Mr. Craven. Thank you, Your Honor. I agree completely with government counsel that for a number of reasons, a very brief explanation would probably have sufficed in this case. What we have, though, is really no explanation, and I would, even though she's not with us today, I would give Judge Thacker the last word in this. In her opinion in Provence, she made a point of saying, we have held sentences with more explanation to be procedurally unreasonable, and she cited the United States against Blue. I agree that Judge Boyle was not required under the individual circumstances of this case to give a lengthy and detailed, endless explanation of the sentence, but I think he was required to go further than he did in explaining it, and we're all left, to a large extent, to speculate. We can make an educated guess as to why he said and did certain things, but an educated guess in this context is not good enough, and I think he could have and should have gone further than he did and was, in fact, required to go further than he did, and unless the court has other questions of me, I'll take the rest of the day off. Thank you, Mr. Craven. We'd like to take the rest of the day off, but unfortunately, we have another case right behind this one, but thank you, Mr. Craven. Let's see here that you two are court appointed. I want to thank you for your good work on this case and for your argument here on behalf of your client, and Ms. Brown, thank you again for your able representation of the government's interests. We would, as you know, come down from the bench and shake your hands and thank you personally, but even the modern technology doesn't allow us to do that, even if we see each other virtually, but thank you again, and we do hope to see both of you soon in Richmond, God willing, so again, thanks very much. God willing, that day will come, and, Cope, it'll be a thing of the past.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson